UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DARYL ROGERS,

                              Plaintiff,

v.

SGT. HOWARD, et al.,

                              Defendants.

Case No. 3:21-cv-05311-BJR-TLF

REPORT AND
RECOMMENDATION

NOTED FOR JUNE 13, 2024

This matter comes before the Court on Defendants State of Washington, Washington State Department of Corrections ("DOC"), Stafford Creek Corrections Center ("SCCC"), Howard, Jolly, Arias, Cardin, Johnson (Quinn), Lystad, Light, Gordon, Herrington, L'Hereaux, Dahne, Brewer, Cherry, Klemme, Sinclair, Haynes, Fithian, Fredrick, Flynn and Russell's (collectively, the "State Defendants") motion for summary judgment. Dkt. 83. The Court accepted Plaintiff's response brief filed on January 31, 2024. Dkt. 131. Plaintiff has brought under 42 U.S.C. § 1983 against the State Defendants for delaying his issuance of a wheelchair, which allegedly caused him to suffer from a fall on June 17, 2020. Dkt. 16 (Plaintiff's Amended Complaint).

This matter has been referred to the undersigned Magistrate Judge. Mathews, Sec'y of H.E.W. v. Weber, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a). For the reasons set forth below, the undersigned recommends the Court

GRANT the State Defendants' motion and dismiss Plaintiff's claims against the Defendants with prejudice.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff is currently an inmate at Monroe Correctional Complex-Twins River. Dkt. 114. During the time of the incidents raised by Plaintiff in his Amended Complaint, he was incarcerated at Stafford Creek Corrections Center ("SCCC"). Dkt. 16, Amended Complaint, at 2, ¶4.

In August 2018, Plaintiff was in a car accident during which he sustained an injury to his neck – this occurred before Plaintiff was incarcerated with DOC. Dkt. 16, at 5, ¶35. He alleges that the injury requires him to wear a neck brace. *Id*.

He alleges that due to the grievances he filed relating to how Defendants handled his neck injury, he was "targeted" by DOC and SCCC staff. *Id*. at ¶36. For example, on May 6, 2020, Plaintiff alleges he attempted to inform Defendants DOC Secretary Sinclair and SCCC Superintendent Haynes of the "retaliatory treatment," but they told Plaintiff that they did not care and did not have the "time to deal with his [Plaintiff's] situation." *Id*. at ¶37.

Plaintiff was seen by Defendant Scott Light on May 14, 2020. Dkt. 95 (Declaration of Scott Light) at 2, ¶5; Dkt. 81, at 4, Exhibit 1 (sealed). Defendant Light recommended that some sort of back support, as opposed to mobility assistance, be provided for Plaintiff during meals so that he could eat with the general prison population. Dkt. 95, at 2-3 ¶¶5-8. Defendant Light deferred to DOC's ADA unit to determine the specific measures that could be made available for Plaintiff. Defendant Light expressed concern that continued reliance on a passive mobility aid, such as a

wheelchair, would result in reliance by Plaintiff and cause further disability. Dkt. 95 at 3, ¶9. The neck collar exacerbated the weakness in Plaintiff's neck according to Defendant Light. *Id.*

Further, on June 17, 2020, and January 10, 2023, Defendant Light saw videos of Plaintiff speaking on the phone for 20 minutes without back support, and ambulating normally while speaking with other inmates for over 20 minutes. *Id.* at 4, ¶¶14, 18.

On May 22, 2020, Defendant Klemme, an ADA Compliance Manager, determined that Plaintiff should be provided with a wheelchair to go to and from the dining hall and during meals at the dining hall for the purposes of providing Plaintiff with back support. *See* Dkt. 94 (Declaration of Rise Klemme) at 2, ¶¶7-8. Upon issuance of the Accommodation Status Report ("ASR"), Plaintiff was required to take the ASR to health services for the wheelchair to be issued. *Id.* at 3, ¶10. *See also,* Dkt. 94-1, at 3-4 Exhibit 2. On May 29, 2020, Plaintiff was provided instructions by Defendant Wright, a Classification Counsel, through an OMNI Kiosk message on how to request issuance of the wheelchair. Dkt. 102 (Declaration of Jeremy Wright) at ¶5. *See also,* Dkt. 102-1, Exhibit 1 ("Your ASR was approved by the Accommodation Review Committee. Please submit SOC Form 12-423 (Health Services Kite) to your provider for the purpose of requesting the issuance of a wheelchair."). Plaintiff states he did not take the ASR to health services until June 12, 2020.  Dkt. 99 (Declaration of William Schwarz), Exhibit D at 65.

On June 12, 2020, Plaintiff's cell was searched by Defendant Cardin, a corrections officer, for drugs.  Dkt. 16 at ¶40. Plaintiff alleges that before the search was conducted, Plaintiff was ordered to walk to the unit holding cells. *Id.* Plaintiff informed

Defendant Cardin that he was in pain and needed help walking to the holding cell; Defendant Cardin allegedly refused Plaintiff any assistance and required him to walk to the holding cell and back on his own. *Id.* Defendant Cardin states that he does not recall Plaintiff requesting any assistance on that date. Dkt. 86 (Declaration of Tyler J. Cardin) at ¶¶5,7. Defendant Cardin discovered legal materials belonging to three other inmates during his search. *Id.* at ¶6. Defendant Cardin wrote an infraction for the violation, which was followed by a hearing. *Id.*; *see also* Exhibit 1.

Plaintiff asserts that he "declared a medical emergency" on June 13, 2020,  due to the pain he was experiencing in his neck and back.  Dkt. 16, Amended Complaint, at 6-7, ¶42. Defendant Gordon, a Registered Nurse, and Defendant Lystad, a PA-C, responded to Plaintiff's request for assistance. Dkt. 88 (Declaration of Damon Gordon) at 2, ¶8. Based on Plaintiff's statement to Defendant Gordon that he had been in bed for three days, Defendant Gordon thought that this was the reason Plaintiff's pain and soreness was exacerbated. *Id.* Defendant Gordon called Defendant PA-C Lystad and dispensed medications to Plaintiff per her telephone order. *Id.* at ¶9. Plaintiff alleges Defendant Gordon instructed Plaintiff to stay in bed, and to "lay down and get rest for the rest of the day." Dkt. 16 at 6-7, ¶42.

Plaintiff asserts that, later on June 13, 2020, during the formal count,  Defendant Quinn, a corrections officer, instructed Plaintiff to sit up and stand for count. *Id.* at 7, ¶43. Plaintiff informed Defendant Quinn about his medical emergency from earlier that same day and the directive from Defendant Gordon to "lay down" and "rest." *Id.* In order for an inmate to be excused from formal count for health reasons, the inmate needs to present the officer with an HSR issued by a member of the SCCC unit. Dkt. 92

(Declaration of Stacia Johnson (Quinn) at 2, ¶8. According to Defendant Johnson (Quinn), Plaintiff did not have an HSR to excuse him from formal count. *Id.* at ¶10.

Defendant Gordon asserts they do not recall telling Plaintiff to rest for the remainder of the day, and Defendant Gordon states they did not tell Plaintiff to interfere with the inmate count process; Defendant Gordon does not have the authority to supersede DOC security policies or procedures. Dkt. 88 at 2-3, ¶10.

Because Plaintiff refused to comply with the mandatory count, Defendant Johnson (Quinn) issued him an infraction. Dkt. 92 at 3, ¶13. An infraction hearing was held on June 17, 2020, during which Plaintiff pled not guilty and offered a statement regarding the incident. Dkt. 91 (Declaration of Timothy Howard) at 3, ¶¶9, 10. After considering the statements of Plaintiff and Defendant Quinn, and the SCCC Offender Orientation Handbook[1], Defendant Howard, who presided over Plaintiff's hearing, found Plaintiff guilty of interference with formal count. *Id.* at ¶13. Plaintiff appealed Defendant Howard's decision on June 18, 2020. Dkt. 16, Amended Complaint, at 11, ¶52. The finding was upheld by Defendant L'Heureux. *Id.*

On June 16, 2020, while returning from retrieving his medication and lunch boat with the assistance of another inmate, Plaintiff was approached by Defendant Jolly, a Correctional Unit Supervisor, and was instructed to separate from the other inmate because it violated SCCC's social distancing requirements. Dkt. 93 (Declaration of James Jolly) at 3, ¶12. Defendant Jolly states he confirmed that Plaintiff did not have permission from SCCC's medical personnel to have a therapy aide. *Id.*

---

[1] The handbook states: "The 15:45 count will be a standing count. Offenders will physically present themselves to employees by sitting upright on their bunk or stool and will not be lying on the bunk or sleeping unless a medical limitation prevents them from standing or sitting." Defendant Howard states that medical limitations are determined by SCCC's medical unit only. *See* Dkt. 91 at Exhibit 3.

On June 17, 2020, Defendant Howard observed Plaintiff was being assisted by another inmate, violating the facility's social distancing requirement. Dkt. 91 (Declaration of Timothy Howard) at 2, ¶6. Because Plaintiff and the inmate would not separate, Defendant Howard issued an infraction. *Id.* at 2-3, ¶8. On the same day, Defendant Arias also observed Plaintiff violating social distancing requirements by walking with assistance from another inmate; Defendant Arias instructed Plaintiff to separate from the other inmate, and when he refused to do so, Defendant Arias issued Plaintiff an infraction. Dkt. 84 (Declaration of Aaron Arias) at 2, ¶11.

Later that morning, Plaintiff had a mandatory medical callout. Dkt. 16, Amended Complaint, at 10, ¶49. Plaintiff alleges he struggled to get to the medical callout without any assistance – because of the lack of assistance, he lost his balance and fell. *Id.* Plaintiff was taken to an off-site emergency room; after returning, Plaintiff was issued a wheelchair. *Id.* at ¶50. The wheelchair was replaced by a seated walker the next day during his appointment with non-defendant Dr. Young[2]. *Id.* at 11, ¶51.

On June 26, 2020, Plaintiff attended two infraction hearings regarding the infractions issued by Defendants Howard and Arias on June 17, 2020. Defendant Cardin, the hearing officer, found Plaintiff guilty of violating social distancing requirements. *Id.* at 11-12, ¶54.

Plaintiff submitted several grievances during this timeframe. Plaintiff filed a grievance on August 10, 2020, against Defendant Howard concerning the incident on June 17, 2020, when Plaintiff was asked to comply with social distancing requirements. Dkt. 87 (Declaration of Tomas Fithian), at 2, ¶7, Dkt. 87-1, at 8, Exhibit 2. Plaintiff's

---

[2] Defendant Young was dismissed as a defendant on October 27, 2022. Dkt. 64.

grievance was denied at each level because there was no evidence that Plaintiff

needed mobility assistance. Dkt. 87-1.

Plaintiff filed a similar grievance against Defendant Jolly after he instructed

Plaintiff to physically separate himself from another inmate to comply with the social

distancing requirements. *See* Dkt. 89 (Declaration of Ronald Haynes) at 2-3, ¶¶9-10,

Dkt. 89-1, at 5-31, Exhibit 2. Plaintiff's grievance was denied at each level. *See id.*

Plaintiff filed a grievance against Defendant Arias concerning the incident in

which he instructed Plaintiff to socially distance from another inmate. *See id.* at 65-81,

Exhibit 4. Plaintiff's grievance was denied at each level. *See id.*

DISCUSSION

A.  Standards

    1.  <u>Summary Judgment Standard</u>

Summary judgment is supported "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Federal

Rule of Civil Procedure (FRCP) 56(c). The moving party bears the initial burden to

demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is

presented when there is sufficient evidence for a reasonable jury to return a verdict for

the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986).

A "material" fact is one which is "relevant to an element of a claim or defense and

whose existence might affect the outcome of the suit," and the materiality of which is

"determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific

*Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). When the Court considers a

motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and

all justifiable inferences are to be drawn in [their] favor." *Id.* at 255. Yet the Court is not

allowed to weigh evidence or decide credibility. *Anderson v. Liberty Lobby, Inc.*, at 255.

If the moving party meets their initial burden, an adverse party may not rest upon the

mere allegations or denials of his pleading; his or her response, by affidavits or as

otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine

issue for trial. FRCP 56(e)(2). The Court may not disregard evidence solely based on its

self-serving nature. *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015).

      In response to the motion for summary judgment, the nonmoving party is

required to present specific facts, and cannot rely on conclusory allegations. *Hansen v.

U.S.*, 7 F.3d 137, 138 (9th Cir. 1993). The court must determine whether the specific

facts that are presented by the non-moving party, considered along with undisputed

context and background facts, would show that a rational or reasonable jury might

return a verdict in the non-moving party's favor based on that evidence. *Emeldi v.

University of Oregon*, 698 F.3d 715, 728-29 (9th Cir. 2012).

      2.  <u>42 U.S.C. 1983</u>

      To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the

conduct complained of was committed by a person acting under color of state law, and

(b) the conduct deprived a person of a right, privilege, or immunity secured by the

Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535

(1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986). Section

1983 is the appropriate avenue to remedy an alleged wrong only if both of these

elements are present. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

Government officials are entitled to qualified immunity in suits against them for an

alleged violation of a constitutional right unless a plaintiff makes a two-part showing.

*Saucier v. Katz*, 533 U.S. 194, 200 (2001). The plaintiff must show that officials violated

a constitutional right *and* that this right was "clearly established." *Id*. A court may

consider the two prongs in whatever order it chooses. *Pearson v. Callahan*, 555 U.S.

223, 236 (2009).

When qualified immunity is reviewed in the context of a defense motion for

summary judgment, the evidence must be considered in the light most favorable to the

plaintiff with respect to central facts.  *Tolan v. Cotton,* 572 U.S. 650, 657 (2014) (per

curiam). If there is a genuine issue of material fact concerning both: (1) Whether the

defendant's conduct violated a constitutional right and (2) Whether it would be clear to a

reasonable officer that their conduct was unlawful under the circumstances they

confronted, then summary judgment granting qualified immunity is not appropriate.

*Bonivert v. City of Clarkston,* 883 F.3d 865, 871-72 (9th Cir. 2018).

As discussed below, viewed in light most favorable to the Plaintiff, the facts do

not show that the Defendants' acts violated Plaintiff's Constitutional rights. Accordingly,

the individual Defendants are entitled to qualified immunity because the first prong of

the qualified immunity test is not satisfied.

B.  <u>Plaintiff's Constitutional Claims against the State of Washington, Department of Corrections, SCCC, and Individual Defendants in their Official Capacities</u>

Plaintiff names the State of Washington, Department of Corrections, and SCCC

defendants in this case. He further brings claims against each State defendant in their

official capacities. The Section 1983 claims against these defendants should be dismissed because they are improper defendants[3].

First, Washington State is not a proper defendant in a § 1983 action. Such a claim may only be brought against "persons" acting under color of state law. 42 U.S.C. § 1983. The United States Supreme Court has made clear that states and state agencies are not "persons" subject to suit under § 1983. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997); *Will v. Michigan Department of State Police*, 491 U.S. 58, 64 (1989). In addition, it is well established that under the Eleventh Amendment, a nonconsenting state is immune from suits brought in federal courts by its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). The State of Washington has not waived its Eleventh Amendment immunity for federal civil rights actions. *See Whiteside v. State of Wash.*, 534 F.Supp. 774, 778 (E.D. Wash. 1982).

Similarly, the DOC is an agency and arm of the State of Washington, and SCCC is a facility run by the State of Washington's DOC. Neither DOC nor SCCC are "persons" for the purposes of Section 1983.

Further, officials acting in their official capacities are not "persons" and so are not subject to a suit for monetary relief under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983").

Finally, in order to state a viable official-capacity claim, the Plaintiff must demonstrate that a policy or custom of the governmental entity of which the official is an

---

[3] Defendants interpret Plaintiff's Seventh Cause of Action against the State of Washington, i.e., respondeat superior, as a claim pursuant to Section 1983. The Court agrees.

agent was the moving force behind the violation. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Even if Plaintiff named proper defendants in their official capacity, Plaintiff failed to allege that those defendants took an action (or failed to take action) pursuant to government policy or custom that violated plaintiff's constitutional rights.

Therefore, Plaintiff's First, Second and Seventh causes of action against the State of Washington, DOC, SCCC, and the individually named State defendants in their official capacities should be dismissed with prejudice.

C. <u>Plaintiff's Eighth Amendment Claim against the State Defendants in Their Individual Capacities</u>

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane prisons. *Farmer v. Brennan*, 511 U.S. 825, 832 (1970). Under the Eighth Amendment, prison officials are required to provide prisoners with basic life necessities, such as food, clothing, shelter, sanitation, medical care, and personal safety. *Id.*; *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986).

Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted); *see Hudson v. McMillan*, 503 U.S. 1, 6 (1992). An Eighth Amendment medical claim has two elements: (1) "the seriousness of the prisoner's medical need and [ (2) ] the nature of the defendant's response to that need." *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " *McGuckin*, 974 F.2d at 1059 (*quoting Estelle*, 429 U.S. at 104). "The existence of an

1    injury that a reasonable doctor or patient would find important and worthy of comment or

2    treatment; the presence of a medical condition that significantly affects an individual's

3    daily activities; or the existence of chronic and substantial pain, are examples of

4    indications that a prisoner has a 'serious' need for medical treatment." *Id.* at 1059-1060.

5       If a plaintiff shows they suffered from a serious medical need, they must then

6    show the prison officials responded to the need with deliberate indifference. *See*

7    *Farmer*, 511 U.S. at 834. Deliberate indifference to a prisoner's serious medical need

8    requires "a purposeful act or failure to act on the part of the defendant." *McGuckin*, 974

9    F.2d at 1060. In other words, "[a] defendant must purposefully ignore or fail to respond

10    to a prisoner's pain or possible medical need." *Id.* A prison official, accordingly, will not

11    be found deliberately indifferent to a prisoner's serious medical needs "unless the official

12    knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S.

13    at 837. "[T]he official must both be aware of facts from which the inference could be

14    drawn that a substantial risk of serious harm exists, and he must also draw the

15    inference." *Id.*

16       It is well established that a mere difference of opinion concerning proper medical

17    care is not sufficient to establish deliberate indifference. *Sanchez v. Vild,* 891 F.2d 240,

18    242 (9th Cir.1989). To prevail on an Eighth Amendment claim which involves choices

19    between alternative courses of treatment, a plaintiff must show "that the course of

20    treatment the doctors chose was medically unacceptable under the circumstances ...

21    and ... that they chose this course in conscious disregard of an excessive risk to

22    plaintiff's health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). A difference

23    of opinion between a prisoner-patient and prison medical authorities concerning proper

24

25

1  treatment likewise does not give rise to a claim under § 1983. *Franklin v. Oregon,* 662

2  F.2d 1337, 1344 (9th Cir.1981).

3       First, with respect to defendants Herrington, Flynn, Fithian and Russell, Plaintiff

4  does not allege any facts that would plausibly show how each of these defendants

5  personally participated in his alleged Eighth Amendment violations[4]. In his complaint,

6  Plaintiff does not refer to these Defendants at all under his Eighth Amendment

7  allegations. Plaintiff further alleges that Secretary Sinclair and Superintendent Haynes

8  were dismissive of his complaints. Dkt. 16 at ¶70.

9       "In order for a person acting under color of state law to be liable under Section

10  1983 there must be a showing of personal participation in the alleged rights

11  deprivation[.]" *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). The record contains

12  no evidence that defendants Herrington, Flynn, Fithian and Russell, Sinclair, or Haynes

13  personally participated in the alleged denial of Plaintiff's Eighth Amendment rights.

14  Plaintiff's conclusory allegations are insufficient to defeat summary judgment.

15  Accordingly, Plaintiff's Eighth Amendment claim against these Defendants should be

16  dismissed.

17       With respect to the three medical professional defendants, neither Defendants

18  Gordon, Light, nor Lystad, stated it was medically necessary for Plaintiff to have a

19  wheelchair prior to his fall for mobility purposes. Defendant Gordon, for example,

20  thought that it was due to Plaintiff not moving for an extended period of time that may

21

22  _____

[4] Plaintiff, for example, claims in his declaration that Defendant Herrington refused to provide Plaintiff with an HSR to eat his meals in his cell, but this was not an issue raised in this case. Rather, it was raised in Plaintiff's other Section 1983 case, 3:21-cv-5311-BJR-TLF. *See* Dkt. 131-1 at p. 17. Based on the Court's review of Plaintiff's response to Defendants' summary judgment motion, it appears that Plaintiff's declaration is duplicative of the one he filed in 3:21-cv-5311-BJR-TLF.

23

24

25

have exacerbated his soreness, pain, and difficulty moving. Dkt. 88 at ¶8. Similarly,

Defendant Light stated while he was trying to find a way to help Plaintiff eat his meals

more comfortably, he did not think mobility assistance was medically necessary. Dkt. 95

at ¶6. Both Defendants Light and Lystad were of the opinion that reliance on mobility

assistance devices could cause Plaintiff greater loss of range of motion, strength, and

mobility. *See id.* at ¶9; *see also* Dkt. 96 at ¶13. Plaintiff was seen on multiple occasions

by each of these Defendants, as well as non-Defendant Dr. Young relating to his pain,

and in each circumstance Plaintiff was either examined directly, or his medical history

was reviewed. Plaintiff ultimately had a difference of opinion with the Defendants on

whether he should have been provided a wheelchair prior to his fall in June 2020.

Finally, with respect to Defendants Howard, Arais, Jolly, Johnson (Quinn),

Cardin, Klemme, L'Hereaux, it appears Plaintiff is alleging they were deliberately

indifferent to his health when Defendants required him to sit up in bed during count and

enforced the social distancing requirements before Plaintiff was issued a wheelchair.

To prove a violation of the Cruel and Unusual Punishments Clause, Plaintiff must

show that a prison official must had a 'sufficiently culpable state of mind.' In prison-

conditions cases that state of mind is one of 'deliberate indifference' to inmate health or

safety". *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). A prison official therefore cannot

be found liable under the Eighth Amendment "unless the official knows of and

disregards an excessive risk to inmate health or safety; the official must both be aware

of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference." *Id.* at 837.

Plaintiff's encounters with Defendants Howard, Arais, Jolly, Quinn, Cardin, Klemme, L'Hereaux, are insufficient to show that defendants had the requisite state of mind – that they were aware of facts supporting an inference of an excessive risk to Plaintiff's health or safety and actually drew the inference that a substantial risk of serious harm to plaintiff existed. Therefore, the Court should dismiss Plaintiff's claim against these Defendants.

D.  <u>Plaintiff's First Amendment Claim Against the State Defendants in Their Individual Capacities</u>

Plaintiff claims that Defendants Howard, Jolly, Arias, Cardin, Quinn, Lystad, Light, Gordon, Dahne, Brewer, L'Hereaux, Cherry, Klemme, Fithian, and Haynes, retaliated against him in violation of his First Amendment rights for filing grievances and internal complaints. Specifically, it appears Plaintiff is alleging that Defendants Howard, Jolly, Arias, Cardin, Light, Lystad, and Gordon retaliated against him by refusing to provide Plaintiff with a wheelchair and/or another form of physical assistance due to his pain. *See* Dkt. 16 at ¶¶84-91. With respect to Defendants Dahne, Brewer, L'Hereaux, Cherry, Klemme, Fithian, and Haynes, Plaintiff alleges they retaliated against him by upholding Plaintiff's infractions during his hearings and issuing "no wrong doing responses" to Plaintiff's staff misconduct grievances. *See id.* at ¶¶92-96.

Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter,* 668 F.3d 1108, 1114 (9th Cir.2012). Violations of this right are actionable under 42 U.S.C. § 1983. To prevail on a First Amendment retaliation claim, a prisoner must prove that: (1) he or she engaged in conduct protected under the First Amendment; (2) the defendant took adverse action; (3) the adverse action was causally related to the protected conduct; (4) the adverse

action had a chilling effect on the prisoner's First Amendment activities; and (5) the adverse action did not advance a legitimate correctional interest. *Watison,* 668 F.3d at 1114–15.

While filing prison grievances and lawsuits is protected conduct, denial of a grievance, alone, does not amount to an adverse action. *See Dicey v. Hanks,* No. 2:14-cv-2018 JAM ACP, 2015 WL 4879627, at *5 (E.D. Cal. Aug. 14, 2015). Here, Plaintiff filed complaints about Defendants' failure to provide Plaintiff with a wheelchair or other assistance due to his pain. He sought exceptions to SCCC's inmate count and social distancing policies as a result of his pain and he alleges he was denied such exceptions as retaliation because of his complaints.

Following each of his complaints, Plaintiff was informed that he did not have the requisite approval to have assistance, either in the form of a wheelchair or aide; therefore, he did not have an approved exception and he was required to follow SCCC's social distancing and inmate count requirements. Viewing the facts in light most favorable to Plaintiff, the non-moving party, the Court could draw an inference based on the sequence of events that the Defendants took an adverse action, i.e.,  insisting that Plaintiff was required to walk and move around on his own even though he told them he was in pain – and he submitted a number of grievances in his quest to obtain assistive equipment and accommodations..

To prevail on a retaliation claim, a plaintiff must further show that his protected activities were "the 'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim v. Cry,* 584 F.3d 1262, 1271 (9th Cir.2009) (quotation and citation omitted). At the summary judgment stage, a plaintiff "need only put forth evidence of retaliatory

1    motive, that, taken in the light most favorable to him, presents a genuine issue of

2    material fact as to [the defendant's] intent." *Brodheim,* 584 F.3d at 1271.

3         In this case, even if Plaintiff shows that Defendants took an adverse action , he

4    presents no evidence of retaliatory motive. Taken in the light most favorable to him, he

5    has not presented any evidence from which to support a genuine issue of material fact

6    as to the Defendants' intent. And Plaintiff does not provide any proof that Defendants'

7    alleged conduct would chill or silence a person of ordinary firmness from future First

8    Amendment activities such as discouraging the filing of future grievances. *Brodheim,*

9    584 F.3d at 1271 (quotation and citation omitted).

10        Finally, Plaintiff has not alleged or presented evidence demonstrating that

11   Defendants' alleged actions did not reasonably advance a legitimate correctional goal.

12   *Id.,* 584 F.3d at 1271–72; *Watison,* 668 F.3d at 1115 (a defendant's actions are

13   unrelated to a legitimate correctional goal when they are either "arbitrary and capricious"

14   or "unnecessary to the maintenance of order in the institution.").

15        When viewed in the light most favorable to Plaintiff, there is no genuine dispute

16   of material fact that the handling of Plaintiff's grievances was not retaliatory in nature

17   and reasonably related to legitimate correctional coals. Accordingly, Defendants motion

18   for summary judgment on Plaintiff's retaliation claim should be granted.

19        E.   <u>Plaintiff's ADA and Rehabilitation Claims Against SCCC, DOC, and State of

20             Washington</u>

21        Plaintiff alleges he was qualified under Title II of the Americans with Disabilities

22   Act and § 504 of the Rehabilitation Act ("RA") to receive "services, programs, and

23   activities" of the DOC because he was "legally blind," had a "severe neck injury"

24   resulting in his need for a wheelchair, and "pain down in spine causing decreased

25

mobility." Plaintiff alleges SCCC and DOC were deliberately indifferent in failing to provide Plaintiff with reasonable accommodation relating to his disabilities causing him to "suffer needlessly."

Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., and § 504 of the Rehabilitation Act ("RA"), as amended and codified in 29 U.S.C. § 701 et seq., prohibit discrimination on the basis of a disability in the programs, services or activities of a public entity[5]. Federal regulations require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II applies to the services, programs, and activities provided for inmates by jails and prisons. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208-13 (1998).

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or

---

[5] Because there is no significant difference between the substantive standards of the ADA and the Rehabilitation Act, the claims may be analyzed together. *See Martin v. Cal. Dep't of Veterans Affairs,* 560 F.3d 1042, 1047 n. 7 (9th Cir.2009).

1   activities; and (3) such exclusion or discrimination was by reason of [his] disability."
2   *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002); *McGary v. City of Portland*, 386
3   F.3d 1259, 1265 (9th Cir. 2004). Determining whether a modification is reasonable (or
4   even required) is necessarily a fact-specific inquiry, requiring analysis of the disabled
5   individual's circumstances and the accommodations that might allow him to meet the
6   program's standards." *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 910-11 (9th Cir. 2013)
7   (citation and internal quotation marks omitted).

8        Furthermore, Plaintiff can only proceed to recover monetary damages, if he can
9   demonstrate "intentional discrimination on the part of the defendant." *Duvall v. County of*
10  *Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). The deliberate indifference standard
11  "requires both knowledge that a harm to a federally protected right is substantially likely,
12  and a failure to act upon that likelihood." *Id.* at 1139.

13       Defendants agree that access to food services and medical services qualify as a
14  program or activity. Dkt. 83 at 26. Plaintiff, however, has not shown that he was denied
15  access to those services. Plaintiff was seen by multiple medical providers regarding his
16  pain and each provided opined that Plaintiff did not have a medical need for any
17  accommodation prior to his fall. Furthermore, Plaintiff failed to show that Defendants
18  were intentionally discriminatory against Plaintiff. Plaintiff's conclusory allegations are
19  insufficient to defeat summary judgment on his ADA and RA claims. Defendants' motion
20  for summary judgment should be granted.

21

22

23

24

25

1

F.  Plaintiff's State Law Claims

2

Defendants argue that Plaintiff's state law claims (i.e., negligence, negligent

3

infliction of emotional distress, and failure to supervise) should be dismissed due to

4

Plaintiff's failure to comply with Washington's tort claim presentment statute.

5

Pursuant to RCW 4.92.100: "All claims against the state, or against the state's

6

officers, employees, or volunteers, acting in such capacity, for damages arising out of

7

tortuous conduct, must be presented to the risk management division." That is, an

8

individual must first file a claim with the Office of Risk Management before filing a tort

9

action against the State of Washington or against state employees. *Levy v. State*, 91

10

Wn. App. 934, 941, 957 P.2d 1272 (1998). Also, pursuant to RCW 4.92.110:

11

> No action subject to the claim filing requirements of RCW 4.92.100 shall
12
> be commenced against the state, or against any state officer, employee,
> or volunteer, acting in such capacity, for damages arising out of tortious
13
> conduct until sixty calendar days have elapsed after the claim is presented
> to the office of risk management in the department of enterprise services.

14

These requirements " 'allow government entities time to investigate, evaluate, and settle

15

claims.' " *Lee v. Metro Parks Tacoma*, 183 Wn. App. 961, 968 (2014) (quoting *Medina v.*

16

*Pub. Util. Dist. No. 1 of Benton Cnty.*, 147 Wn. 2d 303, 310 (2002)).

17

The RCW 4.92 claim-filing requirements are jurisdictional, mandatory, and

18

operate as a condition precedent to a suit against government bodies and employees.

19

*Mangaliman v. Washington State DOT*, C11-1591-RSM, 2014 WL 1255342, at *4 (W.D.

20

Wash. Mar. 26, 2014) (citing *Levy*, 91 Wn. App. at 941-42). Courts strictly construe

21

compliance with these statutory filing requirements. *Schoonover v. State*, 116 Wn. App.

22

171, 178 (2003) (citations omitted). It is also well settled that dismissal of a case is

23

proper when a plaintiff fails to comply with the statutory claim filing procedures. *Hyde v.*

24

25

1  *University of Washington Medical Center*, 186 Wn. App. 926, 929. *See also Malone v.*

2  *Huguenin*, C11-5643-RBL, 2012 WL 3877731, at *3 (W.D. Wash. Sept. 6, 2012)

3  ("[Plaintiff's] state law claims must be dismissed. [Plaintiff] fails to meet a condition

4  precedent: he failed to file a tort claim with the State prior to filing this complaint, as

5  required by RCW 4.92.100.").

6      This remains true whether or not a plaintiff is aware of the pre-suit filing

7  requirement. "No court has excused compliance with the pre-suit claim filing statutes

8  based on a lack of knowledge of the requirements. To the contrary, compliance with the

9  claim filing procedure is mandatory even where the requirements might appear to be

10  harsh and technical." *Levy v. State*, 91 Wn. App. 934, 942, 947, 957 P.2d 1272 (1998).

11      Here, Plaintiff concedes he did not submit a tort claim with the State of

12  Washington prior to filing the instant case. *See* Dkt. 99, Exhibit A at 152:6-13. *See also*

13  Dkt. 100 (Declaration of Jason Siems, State Risk Manager and Legal Counsel for

14  Washington State Department of Enterprise Services) at ¶6 ("DES/ORM does not have

15  any record of any tort claims presented to the State of Washington on or behalf of Daryl

16  Rogers, including concerning the subjecting matter of the Complaint in Case No. 3:21-

17  cv-05311.").

18      Submitting a tort claim after a lawsuit has commenced does not satisfy

19  Washington's pre-suit notice requirement: "[T]he notice requirement in RCW 4.92.110

20  cannot be satisfied after a litigant is already inside the courthouse—it is a condition

21  precedent to entering." *Pickard-Aguilar v. Washington State Emp. Sec. Dep't*, No. C20-

22  1248-RSM-DWC, 2020 WL 8093446, at *2 (W.D. Wash. Dec. 18, 2020), *report and*

23  *recommendation adopted*, 2021 WL 124334 (Jan. 13, 2021).

24

25

Plaintiff's failure to meet this jurisdictional condition precedent requires this Court to dismiss his state law claims. In addition, in finding Plaintiff's state law claims subject to dismissal on this basis, the Court need not and therefore does not address the additional arguments for dismissal included in the motion for summary judgment.

G.  Plaintiff's Claims against John and Jane Doe Defendants

Finally, Plaintiff names several John and Jane Doe defendants in his complaint. While a plaintiff is allowed an opportunity to identify unknown defendants during the discovery period, *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), that period lapsed, and Plaintiff has failed to timely identify these defendants. Accordingly, Plaintiff's claims against the John and Jane Doe defendants should be dismissed.

CONCLUSION

Based on the foregoing discussion, the Court recommends that the State Defendants' motion for summary judgment be GRANTED with respect to Plaintiff's claims. A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on June 13, 2024, as noted in the caption.

Dated this 29th day of May, 2024

Theresa L. Fricke
United States Magistrate Judge